STATE OF MAINE *vs.* PANIEL KAPICSKY.

Androscoggin.    Opinion February 10, 1909.

*Nuisances.  Intoxicating Liquors.    Places of Resort.    Social Clubs.    Indictment.
Evidence.    Mass. Statute, 1887, chapter 206, section 1.    Revised Statutes,
chapter 22, section 1.*

Section 1 of chapter 22 of the Revised Statutes, provides that " all places used . . . for the illegal sale or keeping of intoxicating liquors, and all houses, shops, or places where intoxicating liquors are sold for tippling purposes, and all places of resort where intoxicating liquors are kept, sold, given away, drank or dispensed in any manner not provided for by law, are common nuisances." *Held :* That it was the intention of the legislature by this enactment to declare all places to be common nuisances whenever they should commonly and habitually be•used for the illegal sale or keeping of intoxicating liquors, and also whenever commonly and habitually used as places of resort where such liquors are " given away, drank or dispensed in any manner not provided for by law."

Under the provisions of Revised Statutes, chapter 22, section 1, any place that is resorted to, that is, a place of resort for the mere purpose of drinking intoxicating liquors, is a nuisance ; any place of resort where intoxicating liquors are illegally kept, is a nuisance; any place of resort where intoxicating liquors are given away, is a nuisance.  And any person keeping or maintaining such a place may be punished therefore as provided by statute.

Under the statute, a place of resort is a nuisance if used by a club either to sell intoxicating liquors to its members, or to distribute among its members intoxcating liquors owned by them in common, or to procure for and dispense to its members intoxicating liquors which are bought for and belong to them individually.

If a club, by its agent, purchases and stores intoxicating liquors for its members, and deals out in portions to each member upon his order the liquors belonging to and kept for him, and keeps a place for that purpose, such place is a common nuisance under the statute.

Where the defendant was indicted under Revised Statutes, chapter 22, section 1, for maintaining a common nuisance, to wit, keeping and maintaining a certain tenement as a place of resort where intoxicating liquors were unlawfully kept, sold, given away, etc., from the first day of May, 1908, to the day of the finding of the indictment at the September term, 1908, of the Supreme Judicial Court, Androscoggin county, *Held :* That it was not incumbent upon the State to show that the place was used for such unlawful purposes during the entire period named in the indictment. Proof that the defendant kept and maintained a tenement for any one of

such purposes during any part of the time comprised within the days named in the indictment, would warrant a conviction. It is the nature of the acts done, not the length of time during which they are committed, that constitutes the offense. The case is made out, the offense is committed, if for a single day between those dates that place was so used. If for a single hour in the day it was so used, for that hour it was a common nuisance and whoever for that hour maintained the place was guilty of keeping and maintaining a common nuisance.

On exceptions by defendant. Overruled.

The defendant, a member of the St. Bartholomew Society, of Lewiston, was indicted under the provisions of Revised Statutes, chapter 22, section 1, for keeping and maintaining a common nuisance. Verdict, guilty. During the trial, the defendant excepted to several rulings made by the presiding Justice.

The case is stated in the opinion.

The indictment was as follows :

## "STATE OF MAINE.

"Androscoggin, ss. At the Supreme Judicial Court begun and holden at Auburn within and for the County of Androscoggin, on the third Tuesday of September in the year of our Lord one thousand nine hundred and eight the grand jurors for said State upon their oath present, that Paniel Kapicski of Lewiston, in said County of Androscoggin, laborer, on the first day of May in the year of our Lord one thousand nine hundred and eight, and on divers other days and times between that day and the day of the finding of this indictment, at Lewiston, aforesaid, in the County of Androscoggin, aforesaid, did keep and maintain a certain place to wit: a tenement there situate, then and on said divers other days and times there used for the illegal sale and for the illegal keeping of intoxicating liquors and where on that day and on said divers other days and times intoxicating liquors were sold for tippling purposes, and which said place was then and on said divers other days and times there a place of resort where intoxicating liquors then and on said divers other days and times were there unlawfully kept, sold, given away, drank and dispensed, and which said place, being so used as aforesaid, was then and there a common nuisance, to the great injury and common nuisance of all good citizens of said

State, against the peace of said State, and contrary to the form of the statute in such case made and provided.

"A True Bill,

"I. B. Isaacson, Foreman.

"Frank A. Morey, Attorney for the State for said County."

*Frank A. Morey*, County Attorney, for the State.
*George S. McCarty*, for defendant.

SITTING:   EMERY, C. J., WHITEHOUSE, SPEAR, KING, BIRD, JJ.

WHITEHOUSE, J.   This is an indictment against the defendant under section 1 of chapter 22 of the Revised Statutes, for maintaining a common nuisance from the first day of May, 1908, to the day of the finding of the indictment at the September term, 1908, of court in Androscoggin county.   It is alleged that the defendant kept and maintained a certain tenement as a place of resort where intoxicating liquors were "unlawfully kept, sold, given away, drank and dispensed in a manner not provided for by law."

The defendant was one of 204 members of the St. Bartholomew Society occupying the premises mentioned in the indictment.   The Society had occupied the premises from April, 1908, to the time of the trial of the case in September.   The premises consisted of one large lodge room, a billiard room and a small bar room so called, in connection with the latter.   The Society itself was regularly organized, having a constitution and by-laws and from the dues assessed to the members, sick and death benefits were paid.   The billiard room was open practically all of the time for the recreation of the members.   The defendant claimed that the bar room was open three times each week and that at these times cigars and non-intoxicating drinks were sold to the members, the profits of the sales being devoted to the payment of rent, lights, heat and other expenses incident to the running of the rooms.   A member of the Society acted as janitor and keeper of the bar room, each in turn for two weeks and without compensation.

The State introduced evidence tending to prove that on two separate occasions during the time mentioned in the indictment,

VOL. CV 9

intoxicating liquors were sold upon the premises by the respondent. The first occasion was on the evening of August 29, when the officer looking through a window saw the defendant making numerous sales of what they claimed to have been ale ; the other occasions that of September 5, when the officers looking through a hole in the curtain overhanging this same window, saw the respondent making sales of beer alleged to be intoxicating and later in the evening searched the premises and found the beer which proved upon analysis to contain sufficient alcohol to be in fact intoxicating. The defendant claimed that the beer seized was bought in common by the members of the Society in anticipation of labor day, September 7, each contributing a certain amount for which he was to receive his proportionate part of the beer. It was in evidence that some of the members began to drink their allowance during the afternoon of September 5, and that the drinking continued and was in progress from that time to the time of the seizure late in the afternoon.

The jury returned a verdict of guilty and the case comes to this court on exceptions to certain instructions to the jury given in the charge of the presiding Justice.

It is provided by section 1 of chapter 22 of the Revised Statutes that "all places used  .  .  .  for the illegal sale or keeping of intoxicating liquors, and all houses, shops, or places where intoxicating liquors are sold for tippling purposes, and all places of resort where intoxicating liquors are kept, sold, given away, drank or dispensed in any manner not provided for by law, are common nuisances."

It was obviously the intention of the legislature by this enactment to declare all places to be common nuisances whenever they should commonly and habitually be used for the illegal sale or keeping of intoxicating liquors, and also whenever commonly and habitually used as places of resort where such liquors are "given away, drank or dispensed in any manner not provided for by law." *State* v. *McIntosh,* 98 Maine, 397 ; *State* v. *Stanley,* 84 Maine, 555.

But it is not incumbent upon the State to show that the place was used for such unlawful purposes during the entire period named in the indictment. Proof that the defendant kept and maintained a tenement for any one of such purposes during any part of the time comprised within the days named in the indictment, will warrant a conviction. *Commonwealth* v. *Mitchell*, 115 Mass. 141, and cases cited. In *Commonwealth* v. *Gallagher*, 1 Allen, 592, the defendants erected a temporary tent or booth, constructed of boards and covered with cloth, and on the following day had there several kinds of intoxicating liquors, and between the hours of nine and eleven o'clock in the forenoon, made four or more sales of such liquors. The land on which the booth was erected was hired for three days, but the booth was torn down by the officers at eleven o'clock of the first day.

The defendants were found guilty of maintaining a common nuisance. In the opinion the court says: "The evidence was sufficient to warrant the jury in convicting the defendants. A disturbance of the public peace by the assembly of noisy and dissolute persons, the illegal sale of intoxicating liquors, and other similar acts which tend to make disorder and injure public morals, and thus to create a common nuisance in a house or tenement, may be proved to have occurred in the course of a few hours as well as during a number of days, a week or a month. It is the nature of the acts done, not the length of time during which they are committed, that constitutes the offense."

In the case at bar the presiding Justice correctly defined the word resort and sufficiently explained the meaning of the phrase "place of resort," as employed in the statute. The following instruction was then giving to the jury:

"All places of resort where liquors are 'given away', and again all places of resort where liquors are 'drank,' even if they are not 'sold' or 'given away,' if it is a place of resort under the definition I have given you, and, when there, those men drink the liquor which is intoxicating, that makes it a nuisance under the laws of this State."

In further defining what constitutes a nuisance under the law, the presiding Justice used the following quotation in instructing the jury, viz :

" 'Among other things the legislature has said, and it applies to this case, that any place of resort where intoxicating liquors are kept, sold, given away, drank, or dispensed in any manner not provided for by law, is a nuisance.   Any place that is resorted to, that is, a place of resort for the mere purpose of drinking intoxicating liquors, is a nuisance ; any place of resort where liquors are illegally kept is a nuisance ; any place of resort where liquors are given away is a nuisance.   It must be a place of resort ; and then the statute goes on to say that any person keeping or maintaining such a place shall be found guilty and be punished therefor.' "

" 'In this case, the State says, that between the first day of May last, and the day of the finding of this indictment, at some time between those dates, this place described here, the tenement and so forth, was a place contrary to the form of this statute, a place of resort, and that at that place of resort at some time during this space of time, liquors were kept, sold, given away, drank, or dispensed in some manner not provided by law.   The State need not prove that this place was so kept and used during the whole of that time.   The case is made out, the offence is committed, if for a single day between those dates that place was so used.   Nay, if for a single hour in the day it was so used, for that hour it was a common nuisance and whoever for that hour maintained the place was guilty of keeping and maintaining a common nuisance.' "

"It makes no difference, you see, under this statute whether the men were joined as a club and chipped in in advance,—contributed their sixteen cents and bought this liquor and paid-for it and had it come,—if when it came there it was drank there on the premises—premises resorted to—that would be no defense whatever."

To these instructions the defendant has exceptions.   But it will be observed upon examination of the language used that it is for the most part essentially a restatement of the terms of the statute, and that the comments of the presiding Justice as well as the paragraphs quoted by him are in entire harmony with the previous rulings and

decisions of this court as well as the authorities cited from Massachu-
setts, and are obviously a correct interpretation of the true meaning
and purpose of the statute.

In support of the last paragraph of the instructions to which
exceptions were taken, that "it makes no difference under this
statute whether the men were joined as a club and chipped in in
advance and bought the liquor if when it came there it was drank
on the premises resorted to," the case of *Commonwealth* v. *Baker,*
152 Mass. 337, may be cited as an authority.   That was an indict-
ment for maintaining a nuisance under the Massachusetts statute of
1887, chapter 206, section 1, which provided that "All buildings
or places used by Clubs for the purpose of selling, distributing or
dispensing intoxicating liquors to their members or others, shall be
deemed common nuisances."   In the opinion the court says:   "A
place would be equally a nuisance under the statute if used by a
club either to sell intoxicating liquor to its members, or to distribute
among its members intoxicating liquor owned by them in common,
or to procure for and dispense to its members intoxicating liquor
which was bought for and belonged to them individually.   If the
club, by its agent, purchased and stored intoxicating liquors for its
members, and dealt out in portions to each member upon his order
the liquor belonging to and kept for him, and kept the place for
that purpose, the place was a common nuisance under the statute."

Finally the defendant's counsel requested the following instruc-
tion :   "In order to find the respondent guilty of maintaining a
common nuisance, the jury must find that the place mentioned in
the indictment must have been habitually, commonly used for the
purpose."

The presiding Justice gave this instruction in the following
language :   "This is the law of the State, but there is no limit as
to the time as I have stated to you.   A nuisance may be maintained
and kept in two hours or two weeks or two days if you find the facts
are sufficient."

It has already been seen that this instruction respecting the length
of time during which it must appear that the nuisance was main-
tained in order to warrant a conviction is directly and fully

supported by *Commonwealth* v. *Gallagher*, 1 Allen, 592, above cited.

It is accordingly the opinion of the court that when all of the instructions to which exceptions were taken, are considered in their proper relations to the entire charge, and applied to the facts in evidence in this case, no exceptionable error is disclosed. The certificate must therefore be,

*Exception overruled.*
*Judgment for the State.*